## ADLER vs. COLE and others.

The district court of the United States for the district of Wisconsin, has the power to adopt by rule, and, in the cases provided by law in this state, to is-

June Term,
1860.

ADLER
v.
COLE et al.

sue, in common law actions, process of attachment against the property of debtors, as a provisional remedy, according to the form and mode of proceeding prescribed by the Code of Procedure of this state.

In an action by a vendee of goods, against a creditor of the vendor, who caused the goods to be seized under an attachment as the property of the vendor, and against the officer who seized the goods under such attachment, an averment in the answer, that the goods, at the time of such seizure, were the property of such vendor, is sufficient to authorize the introduction of proof showing that the sale under which such vendee claimed title, was fraudulent and void as to creditors.

APPEAL from the Circuit Court for *Milwaukee* county.

The complaint of *Solomon Adler*, the plaintiff, alleged: 1st. That the defendants, *Cole, Thomas, Reed* and *Cogswell*, on, &c., forcibly and wrongfully took from the possession of the plaintiff, and carried away certain goods of the value of $4,000. 2d. That the defendants, on &c., forcibly and wrongfully arrested the plaintiff, without any reasonable, lawful or probable cause, and held him in custody for about two hours. 3d. That the defendants, on, &c., wrongfully and forcibly entered into a certain tenement, then in the possession of the plaintiff, and occupied by him as a store, and expelled him therefrom, and wrongfully and forcibly kept possession of the same for seven days.

The defendants answered: 1st. By a general denial. 2d. That on the third day of November, 1857, said *Cole* and others, composing the firm of *Fenton, Lee & Co.*, sued out from the U. S. district court for the district of Wisconsin, a writ of attachment, under the seal of said court and attested by the clerk thereof, against the property of *Joseph H. Adler* and *Lewis Shiff*, composing the firm of *Adler & Shiff*, who were indebted to said firm of *Fenton, Lee & Co.*; that said writ of attachment was directed and delivered to the marshal of said district of Wisconsin, and commanded him to attach all the property and effects of the said *Adler & Shiff*, or so much thereof as would satisfy their indebtedness to said *Fenton, Lee & Co.*; that said writ of attachment was placed by said marshal in the hands of said *Reed*, then a deputy marshal for said district, who, by virtue thereof, entered the said store, and seized upon and took the goods referred to in the complaint, as the goods and property of the said *Adler & Shiff*; that the said goods and chattels were, at the

time of the service of the said writ of attachment, the property of said firm of *Adler* & *Shiff*, and liable to attachment or execution by their creditors; that the defendant *Thomas*, at the said time, when, &c., was the marshal of the U. S. for said district, and the defendant *Cogswell*, at the request of said *Reed*, aided in taking an inventory of said goods, and the defendant *Cole*, as one of the plaintiffs in said attachment, directed said marshal to seize and levy upon said goods by virtue of said writ; which is the same trespass complained of, and no other or different.

And the defendants further say, that at the time of the service of the said writ of attachment, the said *Reed*, as such deputy marshal, demanded of said *Solomon Adler*, the plaintiff, a certificate of the goods, property, credits and effects in his hands, belonging to the said *Joseph H. Adler* and *Lewis Shiff*, or either of them, which certificate the said *Solomon* refused to give; that thereupon an affidavit was made and presented to the judge of the U. S. district court for said district, asking the said judge for an order, that said *Solomon Adler* appear before the said judge, and answer concerning the property in his hands belonging to said *Joseph H. Adler* and *Lewis Shiff*, or either of them; that said order was duly served on said *Solomon*, and he refused to appear before said judge and answer, as commanded by the said order; that upon such refusal, application was made for an attachment against said *Solomon*, for contempt of court, and the said court did, thereupon, issue an attachment against the said *Solomon*, and therein directed the said marshal to bring said *Solomon* before said court, and the same was placed in the hands of said marshal to be executed, and the defendant *Thomas*, marshal as aforesaid, by virtue of said attachment, did arrest and bring before said court, the said *Solomon Adler*, which is the same arrest that is stated in the complaint.

On the trial, the plaintiff introduced evidence, that in November, 1857, he was in possession of a store previously occupied by the firm of *Adler* & *Shiff*, and of a stock of goods therein, and that the defendant *Reed*, took all the

goods, locked up the store, and excluded the plaintiff therefrom.

Upon cross-examination, one witness for the plaintiff, who had testified to these facts, stated that the firm of *Adler & Shiff* were in possession of the goods before *Solomon Adler* was; and thereupon the counsel for the defendants asked the witness: "How, and by what authority, did *Solomon Adler*, the plaintiff, come into possession and hold that store and the goods?" This question was objected to by the counsel for the plaintiff, for the reason that it was not proper cross-examination, and because, in the then position of the case, the answer was immaterial; which objection was sustained by the court, and the defendants' counsel excepted. The plaintiff also asked a witness called by him, the following question: "Were you present, in the fall of 1857, at the time of the arrest of *Solomon Adler* by the marshal?" to which question the defendants' counsel objected, for the reason that the question showed an arrest by an officer, and that the warrant under which the arrest was made, was the best evidence. The court overruled the objection, the defendants' counsel excepting, and the witness then testified that he was present at the arrest, and that the marshal, *Mr. Reed*, said: "I have got a warrant or attachment to arrest you," and took the plaintiff off with him; but the witness could not say how long he was detained. The witness further stated: "The marshal was at the store over night. I saw *Mr. Reed, Mr. Cole, Mr. Cogswell, Solomon Adler*, and some of his clerks there. At the time the marshal arrested *Mr. Adler*, he exhibited a warrant to him." The defendants' counsel here moved the court to exclude all the evidence in relation to the arrest of the plaintiff, for the reason that it appeared that the arrest was by a warrant, and the warrant was the best evidence; which motion the court overruled, and the defendants' counsel excepted. The plaintiff also introduced evidence tending to show the value of the stock of goods in said store.

The defendants, to maintain the issue on their part, offered in evidence the record of a certain suit and proceedings in the district court of the United States for the district of Wis-

consin, in which *Aaron D. Fenton, Oliver H. Lee, William H. Davis* and *Merrit T. Cole,* were plaintiffs, and *Joseph H. Adler* and *Lewis Shiff* were defendants. This record contained:

1. The affidavit of *Merrit T. Cole,* one of the plaintiffs in said suit, showing that said plaintiffs had a cause of action against *Adler & Shiff,* the defendants therein, to the amount of $1,898 53, upon a promissory note and an account therein particularly set forth, and that said defendants had removed and disposed of their property, with intent to defraud their creditors, and had pretended to assign all their merchandise and stock in trade, and all debts and demands due them, to one Solomon Adler in trust for creditors. On this affidavit was endorsed the following order: "Nov. 23d, 1857. Let an attachment issue, which is now allowed, on the plaintiffs' giving bond with surety in the penalty of $250. A. G. MILLER, Judge."

2. An attachment bond in the usual form, in the sum of $250, payable to *Adler & Shiff,* signed and sealed by Charles Kupper' and *Merrit T. Cole,* and purporting to have been executed by *Aaron D. Fenton, Oliver H. Lee* and *William H. Davis,* by *Merrit T. Cole,* their attorney in fact, with the affidavit of said Kupper annexed thereto, that he was worth $500, exclusive of property exempt from execution, and of his debts. There was an endorsement on the said bond as follows: "Nov. 23d, 1857. Bond approved. A. G. MILLER, Judge."

3. A præcipe, directing the clerk of said district court to issue "a writ of attachment" in the case of *Fenton, Lee & Co.* vs. *Adler & Shiff,* in a plea of trespass on the case, &c., damages $3,000.

4. A writ out of the said district court, tested the 23d day of November, 1857, and sealed with its seal, directed to the marshal of said district, whereby, in the name, &c., he was commanded to summon *Joseph H. Adler* and *Lewis Shiff* to appear before the said district court, &c., to answer unto *Aaron D. Fenton, Oliver H. Lee, William H. Davis* and *Merrit T. Cole,* in a plea of trespass on the case on promises, to their damage $3,000, and by which he was further required and commanded to attach and safely keep all the property

of the said *Joseph Adler* and *Lewis Shiff* within his district, or so much thereof as might be sufficient to satisfy the demand of the said plaintiff, amounting to $1,398 53, together with costs and expenses, and that of said writ he make due return; together with a return to said writ by said marshal, to the effect that he had, by virtue thereof, on the 23d day of November, 1857, attached the property described in an inventory annexed thereto, (being the same goods described in the complaint in this action,) and had caused the same to be appraised by two disinterested freeholders of the proper county, who were first by him duly sworn to make a true appraisement thereof, (which inventory and appraisal are returned with said attachment,) and that he served the writ on *Joseph H. Adler* and *Lewis Shiff*, by showing them the said writ, and giving to each of them a certified copy thereof, (together with a certified copy of the inventory of the property attached) on the 30th day of November, 1857; and that he made further service of said writ, by leaving a certified copy thereof, with garnishee notice, with *Solomon Adler* on the 23d day of November, 1857. The said garnishee notice was as follows, (style, date, address and signature being here omitted:) "By virtue of a writ of summons with attachment, a copy of which is hereunto annexed, and by direction of the plaintiff's attorney, I hereby attach all the property, real or personal, goods and chattels, moneys, choses in action, debts, credits and effects, which *Joseph H. Adler* and *Lewis Shiff*, the defendants in said writ of summons with attachment, have in your hands, or which is in your possession, or under the control of any or either of you, belonging to said defendants, or either of them, or in which they may have an interest, either legal or equitable. And you are also hereby notified to forthwith furnish me with a certificate under your hand, of the amount and description of all the property and effects which you hold for the benefit of, and debts owing to the defendants in said writ."

5. The affidavit of *Duncan C. Reed*, deputy marshal as aforesaid, made on the 25th day of November, 1857, that he served the writ of attachment above referred to; that a certified copy of said writ was left with said *Solomon Adler*, on

the 23d day of November, 1857, for the purpose of attaching all the property, money and effects in his hands, belonging to said *Adler & Shiff*, and that a statement thereof was at the same time demanded from said *Solomon Adler*, and that said *Solomon Adler* had not furnished the deponent with a statement of the amount and description of the property held by him, belonging to the said *Adler & Shiff*, or either of them. Upon this affidavit was endorsed the following order: "Nov. 25th, 1857. *Solomon Adler* is notified and required to appear before the district court of the United States at the court room in Milwaukee, on Friday, the 27th inst., at 10 o'clock A. M., and be examined on oath concerning the property in his hands. A. G. MILLER." To this order return of service was made as follows: "Served on the within named *Solomon Adler*, by showing him this order, and delivering him a copy thereof, this 26th day of November, 1857. (Signed,) M. J. THOMAS, Marshal, by D. C. REED, Deputy."

6. An attachment against the said *Solomon Adler* for contempt, for his not appearing before said court in pursuance of said order; the command of which writ to the said marshal was as follows: "You are hereby commanded to attach *Solomon Adler* and him safely keep, so that you may have him before the district court of, &c., forthwith, to answer as for contempt, for his not appearing in pursuance of an order and motion to appear in court, and submitting to an examination on oath concerning property in his hands belonging to the defendants, in the case of attachment of *Aaron D. Fenton, Oliver H. Lee, William H. Davis* and *Merrit T. Cole*, against *Joseph H. Adler* and *Lewis Shiff*, and of this writ make due return." On this writ was endorsed the following return: "Served by arresting the defendant. M. J. THOMAS, Marshal, by D. C. REED, Deputy."

7. The declaration filed in said district court, on the first Monday of December, 1857, in the suit of *Fenton, Lee & Co.*, against *Adler & Shiff*, upon the same causes of action set forth in the affidavit upon which the attachment was founded; and a judgment in said action for $1,320 47, besides costs, rendered on the 5th day of January, 1858.

The counsel for the plaintiff objected to the admission of said record in evidence, for the reasons that the affidavit for the attachment was by one of the defendants, and makes evidence in their own favor; that the U. S. district court for the district of Wisconsin has no jurisdiction over the writ of attachment as a mesne process, and that the offer embraces too much; which objection was sustained, the court deciding that the record as a whole could not be read, and the defendants excepted. Thereupon, the defendants offered to read in evidence the affidavit of *Merrit T. Cole*, the order of the judge allowing the attachment, the bond, the *præcipe* and the writ of attachment, as the same are set forth in the record aforesaid. This offer was objected to by the counsel for the plaintiff, for the reasons last above stated, and also, because the *præcipe* calls for a writ of attachment; which objection was sustained by the court, and the defendants excepted. Thereupon, the defendants offered to read in evidence the writ of attachment, the return of the marshal thereon, and the schedules attached; to which the plaintiff's counsel objected, for the reason that the said district court had no jurisdiction to issue the process, and because there was no proper bond, the bond offered as a part of the record purporting to be executed by an attorney in fact, and no authority thus to execute it accompanying the same, nor anything to show his authority to execute it; and because the goods were attached before there was any service on the defendants. The court decided that the papers should be read, and the same were read, the plaintiff's counsel excepting. The defendants then called as witnesses George Cogswell and Frederick Wardner, who testified that they were the persons selected by the marshal to appraise the goods taken under the attachment, and that the value of the goods was $2,588. The counsel for the plaintiff put to each of the witnesses the following question: "Were you, on the 27th day of November, 1857, a freeholder?" To which question the counsel for the defendants objected, for the reason that the same was irrelevant and not proper cross-examination; but the court permitted the question to be put for the purpose only of impeaching the credibility of the witnesses, and

June Term, 1860.

Adler
v.
Cole et al.

the defendants excepted.   The witness Cogswell answered, that at the date of the appraisal he was a freeholder; and to the question, "Where was your freehold?" which was objected to for the same reason, but admitted by the court for the purpose of impeaching the credibility of the witness, he answered, that he did not know that he had any title to land in Wisconsin, and could not tell where he had any; that he once had forty acres in Genesee county in Michigan, and did not recollect having made any conveyance since that time. The witness Wardner answered that he was not a freeholder, but afterwards added that he had a small piece of land—a lot in the cemetery—and a deed of it.   Several questions were put by the plaintiff to the defendants' witnesses, as to what was said at the time of the attachment, &c., and other questions for the purpose of testing the accuracy of the appraisement, but the answers not being material to an understanding of the decision made by the court, they are here omitted.   The defendants then offered in evidence the entire record, before referred to, in the case of *Aaron D. Fenton et al. vs. Joseph H. Adler et al.*, which was objected to, for the following reasons:

1.   The answer does not set up facts under which the proof can be admitted.   The U. S. district court had no jurisdiction to issue an attachment for the taking of the goods.

2.   The defendants do not offer to follow it up with proof to show any fraud in the transfer of the property from *Adler & Shiff* to the plaintiff.

3.   The offer is an entirety, and should be more limited.

4.   The offer is immaterial under the pleadings.

5.   The officer's return to the writ of attachment does not show a legal execution thereof.

6.   The judgment is not evidence, as against the plaintiff, of an indebtedness at the time he, the plaintiff, got title to the goods.

7.   There is no proof, or offer of proof, that the plaintiff derived title from *Adler & Shiff*.

8.   The U. S. district court had no jurisdiction to issue an attachment against the person of *Solomon Adler*.

9. The affidavit and proceedings to attach him were illegal.

10. The defendants, not having obeyed the law in the execution of the writ of attachment, are not protected under it.

The court ruled out the affidavit of *Reed*, the order thereon, the writ of attachment for the person and the return thereon, holding that the district court had no jurisdiction over the same; to which ruling the defendants' counsel excepted; but under the objections of the counsel for the plaintiff, the court permitted the remaining portion of said record to be read, "for the purpose only of showing an indebtedness in favor of the plaintiffs in the said attachment suit against *Adler & Shiff*, and that they were creditors of *Adler & Shiff*."

The defendants thereupon offered the said record, leaving out all the papers relating to the arrest of *Solomon Adler*, for the purpose of showing all the preliminary steps in the attachment suit, and as a justification to the defendants, and for all other lawful purposes; which offer was objected to by the counsel for the plaintiff, for the same reasons as above given. The objection was sustained by the court, and the defendants excepted. The defendants then called upon the plaintiff to produce the original assignment of *Joseph H. Adler* and *Lewis Shiff* to him, which was produced, and it was admitted by the plaintiff that it was the only assignment executed by the said *Adler & Shiff* to the plaintiff, but did not contain the schedule of assets, which the plaintiff admitted was in his possession on the day the trial commenced, but was then lost. And thereupon the defendants offered to give in evidence, the said assignment. The instrument thus offered was executed the first day of November, 1857, and purported to assign and transfer to *Solomon Adler* the stock of merchandise, &c., belonging to *Adler & Shiff*, and all debts and demands due to them, in trust to sell and dispose of said goods, &c., and collect and get in the said debts and demands, and out of the proceeds to pay in full certain preferred creditors, and to distribute the balance ratably among the other creditors of said firm of *Adler & Shiff*, a list

of whom, with the amount respectively due to each, was annexed to said assignment. The plaintiff objected to the admission of said assignment in evidence, for the reason that it was immaterial under the pleadings. The court sustained the objection, and the defendants excepted.

The defendants, in connection with their former offer, then offered evidence to show that the assignment of *Adler & Shiff* to the plaintiff was fraudulent and void as to their creditors, and made for the purpose of hindering and delaying said creditors in the collection of their debts; which offer was objected to by the plaintiff, for the reason that the evidence was immaterial under the pleadings. The court sustained the objection, and the defendants excepted.

The defendants further offered evidence to show that *Solomon Adler*, the plaintiff, colluded and combined with *Adler & Shiff*, in the conveyance of their property by the assignment and otherwise, for the purpose of defrauding, hindering and delaying their creditors, and the plaintiffs in the aforesaid attachment suit in the district court, out of their debts; and that the said plaintiffs were creditors of *Adler & Shiff*, at the time of the issue of the said attachment; which evidence was objected to by the plaintiff, as being immaterial, and not tending to prove the issue under the pleadings. The court sustained the objection, and the defendants excepted.

The defendants further offered to show the title of the goods in *Adler & Shiff*, in mitigation of damages; to which offer the plaintiff objected, for the reason that such title was not alleged in the answer, and that the evidence was offered in mitigation of damages, whereas it should have been offered by way of defense. The court sustained the objection, and the defendants excepted. The defendants further offered to prove that the title to the property in question was in *Adler & Shiff*; that *Fenton, Lee & Co.*, being creditors of *Adler & Shiff*, caused the property to be seized by virtue of an attachment, and took the same out of the possession of the plaintiff, and that the same was sold according to law, and the proceeds applied to the proper payment of *Adler & Shiff's* debt, due to said *Fenton, Lee & Co.* This offer was objected

to by the plaintiff; the court sustained the objection; and
the defendants excepted.

The defendants further offered to give in evidence the or-
der of attachment against the person of *Solomon Adler,* being
a part of the record aforesaid; to which the plaintiff ob-
jected, and the court sustained the objection, and the de-
fendants excepted.

Thereupon the defendants, by their counsel, moved for
leave to amend their answer by adding certain allegations,
which were, in effect, that all the title of the plaintiff to the
store, merchandise, &c., mentioned in the complaint, was un-
der and by virtue of the assignment above described, made
to him by *Joseph H. Adler* and *Lewis Shiff,* and that the said
assignment was fraudulent and void as to the creditors of
said *Adler & Shiff,* &c. The court refused to allow the
amendment, on the ground that it set up an entirely new
and different kind of defense; to which ruling of the court
the defendants excepted.

After the case had been submitted to the jury by the par-
ties, the plaintiff moved to discontinue as to the defendant
*Cogswell,* which was granted; and thereupon the court, among
other things, charged the jury as follows:

" In regard to the second cause of action, the complainant
alleges that he was arrested and held in custody two hours.
In considering this, I will also consider the third cause of ac-
tion. In regard to these, I think that under the whole of
the pleadings, you are justified in finding a general verdict
against the defendants. They have all justified, and I think
none of them can now deny their part in the acts complained
of, having in their pleadings avowed them. If you find
from the evidence that the arrest was made and the store ta-
ken as alleged in the complaint, I suppose there is no doubt,
under the pleadings and proof, that you will find a verdict
for the plaintiff on these two causes of action. As to the
damages, if you find for him, you will give him full and fair
compensation. You can also give him exemplary damages
for the wilful and malicious arrest, if you find that the arrest
was wilful and malicious. These damages are called exem-
plary or punitory, and are allowed in this sort of an action,

but only where the trespass complained of is malicious and wilful. In this case the arrest was made under a writ of attachment against the plaintiff, issued out of a court. I have decided that the writ improperly issued, and affords no justification to the defendants. If you find that this writ was obtained by the defendants maliciously and wilfully, you can give such damages as I have called exemplary or punitory. If it was not obtained maliciously and wilfully, but by innocent mistake, you are not at liberty to give such damages."

To which charge of the court, and every part thereof, the defendants excepted.

The court further charged the jury: "If you find the defendants guilty of dispossessing the plaintiff of his store, then you can find compensatory damages, and also exemplary damages, if you find it was maliciously done." To which charge the defendants excepted.

The defendants then asked the court to instruct the jury as follows: "In order to entitle the plaintiff to recover, in this suit, against all the defendants, for a forcible and wrongful arrest of the plaintiff, as set forth in his complaint as the second cause of action, the jury must find, from the evidence, that all the defendants aided and assisted in such arrest; and there is no evidence in the case implicating any of the defendants but *Duncan C. Reed.*" This instruction the court refused to give; to which refusal the defendants excepted.

The court further charged the jury: "That if they found that the arrest was made wilfully, they had a right to give damages as a punishment to the defendants, for the purpose of making an example, and as a warning to them and others, in addition to the damages which were a compensation for the plaintiff's injuries, and that the complaint alleged four thousand dollars damages for the arrest, and four thousand dollars damages for the goods, and that in estimating the damages for the arrest, they could give anywhere from six cents to four thousand dollars, but that they might, in making their estimate of damages, take into consideration the fact that it was done under color of law." To which charge the defendants excepted.

The jury brought in a verdict for the plaintiff, in which

they assessed the value of the goods at $3,363,50, with interest at 7 per cent.; damages on the arrest, $1,000. The defendants objected to the entry of judgment upon the verdict. The court directed the jury to again retire, and put their verdict in a gross sum, and the defendants excepted to the order. Afterwards the jury came into court, and returned a verdict for the plaintiff, assessing his damages at $4,625,67. The defendants objected to the reception of this as the verdict of the jury, for the reason that the jury had before returned a verdict into court, which, upon being called, they declared was their verdict, and that the present verdict was different in substance from the former. The court overruled the objection, and the defendants excepted.

Motion for a new trial overruled, and judgment entered upon the verdict, from which the defendants appealed.

*Finches, Lynde & Miller*, for the appellants, contended that the evidence offered to show that *Solomon Adler* had no title to the goods, &c., and that the assignment by *Adler & Shiff* to him was fraudulent as to creditors, was admissible, and cited *Williston vs. Jones*, 6 Duer, 504; *Hunter vs. Hudson R. Iron & M. Co.*, 20 Barb., 493.

As to the admissibility of the transcript of the record of the U. S. district court, their argument was substantially as follows: 1. *The district court · of the U. S. for the district of Wisconsin has power to issue writs of attachment.* It has issued them ever since its organization. Its rules have, from time to time been adopted with reference to the law of this state in such matters. Its rule on this subject at the time when the attachment in question issued, was as follows:

"Rule 6. Attachments may be allowed by the judge or a commissioner of this court, upon the terms required by law. A clause of attachment will be inserted in the summons. But if an attachment is allowed after the service of the summons, the summons may be omitted or issued as an alias summons. The writ will be issued according to the præcipe. The law of the state in force at the time, and its remedies on this subject, will be enforced in substance."

The district court had a right to adopt by rule, as a part of its process and proceedings, the attachment law of the

state.  *U. S. Bank vs. Halstead*, 10 Wheat., 51; *Wyman vs. Southard*, id., 1; *Beers vs. Haughton*, 9 Peters, 359; *Boyle vs. Zacharie*, 6 id., 635; *Keary vs. The Farmers' and Mer. Bank*, 16 id., 94; *Duncan's heirs vs. United States*, 7 id., 435; *Fullerton vs. Bank of U. S.*, 1 id., 604; *Mills vs. Bank of U. S.*, 11 Wheat., 431; *Ely vs. Hanks*, February No., 1859, of Western Law Monthly, 107; 1st U. S. Stat. at Large, pp. 73, 77, 93, § 17, and p. 83; 4th id., 278; 9 id., 56 and 233; 9 id., 213.  Counsel called the attention of the court specially to the statute of March 14, 1848, last cited, and to the construction put upon the same by the U. S. district court for the district of Ohio, in the case of *Ely vs. Hanks*, above cited.  To the objection that the state attachment law can not be adopted by the district court, because the marshal cannot bring suit in that court in his own name, upon notes and accounts due the defendant in the attachment suit, in the same manner as the sheriff is required to bring suit in his own name upon such evidences of debt in an attachment suit commenced in a state court, counsel replied that the law does not require the sheriff to bring his suit in the same court in which the attachment is commenced, and the marshal might, therefore, bring his suit in a state court.

2.  *There was no failure to obtain jurisdiction in this case, from any defect in the form of the writ.*  It is said that because an attachment clause is inserted in the original summons, we have made a new writ, unknown to the common law, and, therefore, the summons and attachment is a nullity, and the district court had no jurisdiction.  But the *summons* is not destroyed, because it contains *more* than is necessary for a summons.  *Toland vs. Sprague*, 12 Peters, 330.  As to the *warrant of attachment*, it would not have been void if pasted on the back of the summons, nor was it any violation of law to include it in the summons.  The law only provides, that a "warrant of attachment must be obtained from a judge of the court in which the action is brought, or from a county judge or court commissioner;" and that it "may be obtained *at the time of issuing the summons*, or at any time afterwards."  It prescribes nothing in regard to its form.  The district court, as already shown, had a right to prescribe its

form; and the question of form is one of practice merely, and does not involve a question of jurisdiction.

3.  *The record presents a proper case for the issue of the writ.* It shows that every requisition of the attachment law was complied with.  The affidavit was made, the order allowing the attachment obtained from the judge of the court, and the bond given.  The bond was legal; it was *good on its face*, and could not have been questioned even on a motion to quash the attachment.  6 Smedes & Marsh., 276; Rule 2, Additional Rules of U. S. Court.

*Brown & Ogden*, for respondent, contended that the offer of the defendants to show an assignment to the plaintiff by *Adler & Shiff*, and that the assignment was fraudulent, was in direct conflict with their answer, and properly overruled. *Eaton vs. White*, 2 Wis., 292.

Counsel also contended that the court properly rejected the offer, by the defendants, of the entire record above described; for the reasons, 1st. That the answer of the defendants set up only the writ, relying upon that for protection, and the other proceedings were, therefore, immaterial; 2d, That under the order of the court, the officer could not execute the writ until the bond was given, and the instrument filed as such was no bond, as to several of the parties, because their names are signed by *Merrit T. Cole*, without any authority given him so to sign being filed or shown.  *McCarty vs. Gage*, 3 Wis., 404.  3d. That the materiality of the record depended upon its connection with proof of title in *Adler & Shiff*, which proof was inadmissible under the pleadings.  4th. That the district court had no power over the property until it had first gained jurisdiction over the person by service of the summons, and that it appears from the return of the officer, that the attachment was made several days before the service of the summons.  5th. That the district court has no jurisdiction, in any case, of the writ of attachment as a mesne process.  On this last point counsel argued as follows:

The powers of the district court of Wisconsin are derived solely from the act of congress which provides for the admission of Wisconsin into the Union.  Revised Statutes, p.

1082, sec. 4. This act confers upon that court the same powers as are conferred by the judiciary act of 1789 upon the judge of the district court of Kentucky. The process act of 1789 is entirely distinct from the judiciary act, and the provisions of that and the several subsequent process acts do not apply to the district court of Wisconsin. The process act of 1789 simply authorized the adoption by the United States courts *then* in existence, of the process *then* used by the supreme courts of the several states *then* in the Union. U. S. Stat. at Large, vol. 1, p. 92, § 34; id., p. 93, § 2. This act was merely continued by that of 1792. Id., p. 276, § 2. These acts have received an interpretation in several cases in the United States courts. *Toland vs. Sprague,* 12 Peters, 300; 5 Mason, 35; *Wyman vs. Southard,* 10 Wheat., 1; Peters' C. C. Rep., 1; *Ross vs. Duval,* 13 Peters, 60. In 1828 congress passed a law applicable to those states admitted subsequently to Sept., 1789, and before 1828, (and therefore to Kentucky, which was admitted in 1792,) giving the power to adopt, with such alterations as the several United States courts might deem necessary, the state process *then* used; and, as to executions, &c., the power to change their rules from time to time, so as to conform to the state law. U. S. Stat. at Large, vol. 4, p. 278. Another act was passed in 1842, applying the provisions of the law of 1828 to states admitted up to the date of the act. Stat. at Large, vol. 5, p. 499. It is important to remark, that in regard to the power of the supreme court to make alterations in process, the words "*from time to time*" are used, but not as to circuit and district courts. If then this were the district court of Kentucky, to whose powers those of the Wisconsin district court are limited, we should say it had no jurisdiction to create, as a modification of the state law, the writ in question; 1. Because the power of the court (except in reference to *final* process,) was to adopt the state process with modifications; and having once adopted them, its power was exhausted. 2. Because the process to be adopted was such as was used at the date of the passage of the act. This is fully explained in some of the cases above cited. 3. Because the original process used by the state courts was merely a summons, and

this is a new writ. 4. Because the proceedings under an attachment in the state courts are entirely inapplicable to the United States courts. The title to the property of, and debts due to the defendant become changed, and the sheriff has the right to sue for and recover in his own name, both property and debts. How could the marshal proceed against citizens of the same state in the United States court? The whole law could not be adopted, and consequently no part could. *McCracken vs. Hayward*, 2 How., 608. 5. Because the power of the United States courts, by the acts of congress, was to adopt and modify the form of process, not to create new rights. Attachment on *mesne* process, and the consequent sequestration of property, is a new right given to a litigating party, a rule of property for the time being, and not a mere form of proceeding. The creation of such a right in behalf of the plaintiff, is an exercise of the highest and most delicate power vested in the legislature, and congress neither did nor could vest such power in any judge or court; nor could the state legislature transfer its own authority to another body.

*By the Court*, DIXON, C. J. The main question in this case, is whether the United States district court for the district of Wisconsin has the power by rule to adopt, and, in the cases provided by law within this state, to issue, in common law actions commenced or pending in that court, process of attachment against the property of debtors, as a provisional remedy, according to the form and mode of proceeding prescribed by the Code of Procedure. After its enactment, that court, by a general rule, adopted its provisions on that subject, and ordered that attachments might be allowed by the judge or a commissioner, upon the terms required by law, a clause of attachment being inserted in the summons: or in case of an attachment allowed after the service of the summons, that the summons might be omitted, or an *alias* issued; and that the law of the state in force at the time, and its remedies on the subject, should be observed in substance. As the other questions involved in the case spring from this, we shall not discuss them. Like all other questions touch-

June Term, 1860.

ADLER
v.
COLE et al.

July 10.

June Term,
1860.

ADLER
v.
COLE et al.

ing the powers of the federal courts, no question under the constitution of the United States being made, it depends upon the construction to be given to the several acts of congress in relation thereto. The power of congress to confer the jurisdiction sought to be impeached is not denied, and the only question is, has congress done so? Questions of this nature are not of frequent occurrence in this court, and as we have been referred to no adjudications of the supreme court of the United States, which in our opinion reach the point in controversy; and as we are not, we regret to say, sufficiently familiar with the decisions of the learned judge of the district court, if indeed he has had occasion to pass directly upon the question, to know upon what laws of congress he rests the power, we are compelled to a great extent to determine it upon our own construction of those laws. If by the decision of the supreme court of the United States, a construction had been given to any of the acts of congress, by which it was held that the power exists in the district court, we should feel bound by such decision, and be relieved from any examination of the subject. There being, to our knowledge, no such construction by that court, we must interpret for ourselves.

If, in our opinion, the exercise of this power by the district court depended solely upon that clause of the 4th section of the "act to enable the people of Wisconsin territory to form a constitution and state government, and for the admission of such state into the Union," approved August 6th, 1846, (9 U. S. Stat. at Large, 56,) which declares that the judge of the district court "shall, in all things, have and exercise the same jurisdiction and powers which were by law given to the judge of the Kentucky district, under an act entitled 'an act to establish the judicial courts of the United States,'" and which alone, in connection with the judiciary and process act, was cited and relied upon by the counsel for the appellants, we confess we might find some difficulty in upholding it. Nevertheless we are not prepared to say that it might not in that view be sustained; nor that it would be an unwarranted construction of the 14th section of the judiciary act, to hold that the courts organized under it, might

without the restrictions imposed by the process acts, from June Term, time to time modify or change the remedy by attachment, 1860. agreeably to the principles and usages of the laws of the states within which they are held, at the time such modifica-tions or changes were made.　The reasoning of the supreme court in *Wyman vs. Southard*, 10 Wheat., 1, and *U. S. Bank vs. Halstead*, id., 51, as we may hereafter have occasion to notice, tends strongly to support this conclusion, though the question was not directly before it.

The process acts cited and relied upon, are the temporary law of September 29, 1789, which was pending before con-gress at the time of the passage of the judiciary act, and the act of May 8, 1792 (U. S. Stat. at Large, 275), by the 2d section of which the temporary law, with certain modifica-tions and reservations of power on the part of the courts, was continued and made permanent.　We were also referred to the act of May 19, 1828 (4 U. S. Stat. at Large, 278), and that of August 1, 1842 (5 U. S. Stat. at Large, 499), by the former of which the provisions of the prior acts in relation to process, were extended to those states which had been ad-mitted since the 19th of May, 1828.　These latter acts, how-ever, except so far as they evince a clear intention on the part of congress to continue in force throughout all the states of the Union, the provisions of the original process act, as made permanent, thus making the form of writs, executions and other process, except their style, and the forms and modes of proceedings in suits at common law, to correspond with those in use in the several states, seem to have no par-ticular bearing upon the question we are considering.　The second section of the act of 1789 enacts, " that until further provision shall be made, and except where by this act, or other statutes of the United States, it is otherwise provided, the forms of writs and executions, except their style, and modes of process and rates of fees, except fees to judges, in the circuit and district courts, in suits at common law, shall be the same in each state respectively as are now used or allowed in the supreme courts of the same."

The act of 1792, continuing and making permanent that of 1792, provided, that " the forms of writs, executions *and*

ADLER
v.
COLE et al.

*other process, and the forms and modes of proceeding* in suits in those of common law," should be the same as *then* used in the said courts respectively, in pursuance of that act, "except so far as may have been provided for by an act to establish the judicial courts of the United States, *subject, however, to such alterations and additions as the said courts respectively shall, in their discretion, deem expedient*, or to such regulations as the supreme court of the United States shall think proper, from time to time, by rule, to prescribe to any circuit or district court concerning the same."

Viewing the question in the light in which the argument of the counsel for the appellants placed it, namely, that the jurisdiction and powers of the district court of Wisconsin are derived solely from that clause of the 4th section of the act to enable the people of the territory of Wisconsin to form a constitution and state government, which we have above quoted, it seems very evident that all the above mentioned acts concerning the forms of writs and process, and the forms and modes of proceeding in the federal courts, are entirely out of the case. They were all enacted after the passage of the judiciary act, by virtue of which the district court of Kentucky was organized. In it no reference was or could have been made to them. The language is plain and unambiguous, and limits the powers and jurisdiction conferred to such as were given to the district court of Kentucky by the judiciary act. Argument is useless to prove that authority given to the district court of Kentucky by other and subsequent acts of congress, is not by this language conferred upon the district court of Wisconsin. Such a construction cannot be maintained. Hence the authorities cited, which establish that the circuit court and other district courts of the United States, have the power, by rule, to adopt the forms of process in use in the several states in which they have jurisdiction, are inapplicable in this view of the matter, for the reason that they are all based upon the provisions of the 2d section of the act of 1792, which subjects them to "such alterations and additions as the said courts respectively shall, in their discretion, deem expedient." We are, therefore, to look to the judiciary act to ascertain what powers

are conferred by it upon the several courts thereby established.

By the 10th section, the district court in Kentucky, beside the jurisdiction thereby given to the district courts, was declared to have jurisdiction of all other causes, except of appeals and writs of error, thereinafter made cognizable in a circuit court. The 14th section enacts, "that all the beforementioned courts of the United States, shall have power to issue writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." These are all the provisions of that act bearing upon the question as viewed by counsel. We were referred to the last clause of the 17th section, which declares that "said courts shall have power to make and establish all necessary rules for the orderly conducting of business in the said courts, provided such rules are not repugnant to the laws of the United States;" but as the supreme court has decided (*Wyman vs. Southard, supra*) that this section is confined to business actually transacted in court, and does not contemplate proceedings out of it, it has no application here. As we are not, however, compelled to decide the question upon the theory of counsel, and since we are clearly of opinion that there is another clause in the 4th section of the act of 1846, which does confer upon the district court this power, it becomes unnecessary for us to say whether, in our opinion, it would, or would not have it under the 14th section. There is much reason for saying, that by a fair construction of its language, and by the effect which has been given to it by the decisions of the supreme court, it does give the power. It is to be observed, that it is this section which gives to the federal courts their power to issue process. The process acts prescribe the forms of processes, but confer no power to issue them. They are merely limitations upon the power here given. They restrict it, by prescribing in what manner it shall be exercised. Without them, the courts would be at liberty to select among all the forms of process, which are *agreeable to the principles and usages of the law,* such as best suited

their taste or convenience, without regard to such as were in use in the states in which they respectively had jurisdiction. It was to restrain this otherwise unlimited choice in the forms and modes of proceeding which prevailed in the various states, and in which they all differed more or less, that these acts were passed. Such is the interpretation of the supreme court in the cases above cited. If this be so, it would follow that the district court of Wisconsin, without some other provision bringing it within the restrictions, would possess more enlarged powers upon the subject of process, than the district and circuit courts of an earlier date, to which the restrictions do apply. It could issue processes agreeably to the principles and usages of the law in any of the states, whilst they are confined, without some special rule, to such as are used in the states in which they preside. Nor would it be confined to such writs as were used at the time of the passage of the act; for the law, being permanent in its nature, and intended to operate for all future time, or until it should be modified or repealed, would be held to apply to such principles and usages of law as are known at the time of their issue, and would not be limited to such as were known at the time of its enactment. It has no such words of limitation as the original process act. Therefore, the argument of the respondent's counsel, drawn from the word "now," as used in that act, is inapplicable.

It was urged that the writ of attachment could not be issued under this section, because it was not "*necessary*" to the exercise of the jurisdiction of the court; that all its powers could be exercised without it. It is true, that for the purpose of obtaining jurisdiction of the person, and enabling the court to pronounce a valid judgment, it may be dispensed with; but in many cases, for the purpose of accomplishing justice, which is the end sought by litigation, it becomes absolutely necessary. It was undoubtedly the intention of congress to place in the hands of the courts those means which are usually resorted to for the purpose of attaining the objects for which their powers are invoked; and to hold to this narrow construction, would be to defeat this intent. It is a process of peculiar importance, and in many

cases so indispensably necessary, that the judicial power cannot be beneficially exercised without it. Giving to the word "necessary," as here used, the meaning which commonly attaches to it when employed to confer power, it must be held to give authority to issue the writ. Under our system of jurisprudence, such a remedy, though not perhaps strictly indispensable, is certainly *needful* and *conducive to* a proper discharge of the duties of a court of general and original jurisdiction.

It was also urged, that the proceeding by attachment was not then known to the law, and that the qualifications of the power under the terms "agreeable to the principles and usages of the law," limited it to such writs as were sanctioned by the principles and usages of the common law. Although the writ of attachment may not be said to be a common law writ, yet it is a very great mistake to suppose that it was not known to the law, at the time of the passage of the act. On the contrary, a very slight investigation will satisfy any one, that it is a proceeding of very great antiquity, its origin being ascribed by some to the Roman law; and that it was not only well known and in general use in the several states at the time of the adoption of our federal constitution, but that it was in like manner known and used by our colonial ancestors long prior to the revolution. Drake on Attachment, chap. 1. This is proved, in part, by the act itself, in the 12th section of which the proceeding is mentioned. To the argument, that the power is confined to such writs as were sanctioned by the common law, it is a sufficient answer to say that the supreme court have decided differently, and held that it was intended to authorize writs sanctioned by the principles and usages of the state laws. *U. S. Bank vs. Halstead, supra,* page 56. But this discussion may perhaps be considered not pertinent, as we have decided the case upon another ground, which we will proceed to state.

By the 1st clause of the 4th section of the act of 1846, to enable the people of Wisconsin Territory to form a constitution, &c., it is enacted: "That from and after the admission of the State of Wisconsin into the Union, in pur-

suance of this act, the laws of the United States which are not locally inapplicable, shall have the same force and effect within the state of Wisconsin, as elsewhere within the United States." This language is too plain for comment. The act of 1792 is not locally inapplicable to this state, and hence by this clause its provisions are extended to the district court. It is a general law, applicable alike to all parts of, and to all the courts in, the Union. By virtue of its being thus extended over this state, the district court had the power, by rule, to adopt the process in question. Otherwise we do not see how any of the vast body of laws, concerning the practice and modes of proceeding in the federal courts, which have been enacted since the passage of the judiciary act, and which constitute the principal part of congressional legislation upon that subject, are to be considered applicable to the district court. They clearly would not be. Such construction would only be consistent with an intention on the part of congress not to make them so, but to leave that court with only such meagre regulations as are made by the judiciary act, or were in force at the time of its passage, which no one can for a moment believe. On the contrary, an opposite intention could hardly have been more plainly evinced. This clause was used to give effect, in Wisconsin, to all laws of a general nature; the other, to declare to what controversies or actions the jurisdiction of the court should extend.

It follows from these views that the judgment of the circuit court must be reversed, and a new trial awarded.

MARCH 12TH, 1861.

A motion for a rehearing having been made in this case, we have carefully reviewed the grounds of the foregoing opinion, and still believe them to be correct. The motion must therefore be overruled. Upon the admissibility, under the averments of their answer, of evidence on the part of the appellants going to show fraud or bad faith in the transfer of the property by *Adler & Shiff* to the respondent, a question upon which it is said we ought to have passed but did not, we say that we think the answer lays a sufficient foundation for it, and that on that account it ought not to be

excluded. The answer alleges that the goods and chattels June Term, were, at the time of their seizure by virtue of the writ of 1860. attachment, the property and effects of *Adler & Shiff* the Powers et al. defendants therein named, and liable to attachment and exe- Bears et al. cution by their creditors. This is a sufficient averment of title or property in *Adler & Shiff* to enable the appellants to establish it by any means in their power; and within the doctrines of this court in *Gillett vs. Robbins*, decided July 30th, 1860, a more particular statement of facts as to how they became the owners originally, or how they continued to be the owners, their title and property having once been admitted or established, was unnecessary. Such detailed statements of title, or facts going to show it, would often be very inconvenient and difficult, and sometimes wholly impracticable or impossible.

Judgment reversed, and a new trial awarded.